**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

DIANE SIMONS,

                Plaintiff,

                                              Case No. 3:12-cv-756-J-JRK

vs.

CAROLYN W. COLVIN,[1]
Acting Commissioner of Social Security,

                Defendant.
_____/

## **OPINION AND ORDER**[2]

### **I. Status**

Diane Simons ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying her claim for disability insurance benefits ("DIB"). Her alleged inability to work is based on her "[a]nxiety, memory loss, lack of concentration, [and] lack of staying on task," and based on her bi-polar disorder and manic depressive disorder. See Transcript of Administrative Proceedings (Doc. No. 11; "Tr."), filed September 17, 2012, at 77, 246. Relevant to this appeal, Plaintiff also has an issue with alcohol. See, e.g., Tr. at 19, 73-74, 433-34. On April 5, 2010, Plaintiff filed an application for DIB, Tr. at 88-90,

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 13), filed September 19, 2012; Reference Order (Doc. No. 14), entered September 20, 2012.

alleging an onset date of October 1, 2007, Tr. at 247.[3] Plaintiff's application was denied initially, Tr. at 92-93, and was denied on reconsideration, Tr. at 104-05. An Administrative Law Judge ("ALJ") held a hearing on August 9, 2011, during which Plaintiff testified. Tr. at 61-84. At the time of that hearing, Plaintiff was forty-four (44) years old. Tr. at 66. The ALJ held a supplemental hearing on December 6, 2011. Tr. at 31-60. During the December 6, 2011 hearing, the ALJ heard testimony from a medical expert and a vocational expert ("VE"). Tr. at 31-60. The ALJ issued a Decision on February 13, 2012, finding Plaintiff not disabled through the date of the Decision.[4] Tr. at 17-25. On May 24, 2012, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, thereby making the ALJ's Decision the final decision of the Commissioner. Plaintiff commenced this action under 42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1) on July 3, 2012, seeking judicial review of the Commissioner's final decision.

## II. The ALJ's Decision

When determining whether an individual is disabled,[5] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining

---

[3] Plaintiff's application reflects that her alleged onset date is October 20, 2006. Tr. at 88. Other documents in the record, including the Administrative Law Judge's Decision from which Plaintiff appeals to this Court, have the alleged onset date as October 1, 2007. Tr. at 17, 247. No dispute is raised as to the alleged onset date. The Court, therefore, assumes the appropriate date is the date used by the Administrative Law Judge: October 1, 2007. Tr. at 17.

[4] The undersigned notes that the record contains other applications for DIB and Supplemental Security Income completed by Plaintiff. See Tr. at 223-24, 225-27. Plaintiff's appeal to this Court stems from the ALJ's Decision issued on Plaintiff's April 5, 2010 application for DIB. Tr. at 17; see Tr. at 88-90. The discussion that follows, therefore, deals only with that Decision.

[5] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

In addition, the Social Security Act "preclude[s] the award of benefits when alcoholism or drug addiction is determined to be a contributing factor material to the determination that a claimant is disabled." Doughty v. Apfel, 245 F.3d 1274, 1275 (11th Cir. 2001); see 42 U.S.C. § 423(d)(2)(C). Accordingly, if an ALJ "determines a claimant to be disabled and finds medical evidence of drug addiction or alcoholism, the [ALJ] then 'must determine whether . . . drug addiction or alcoholism is a contributing factor material to the determination of disability.'" Doughty, 245 F.3d at 1279 (quoting 20 C.F.R. § 404.1535). The "key factor" in this materiality determination "is whether the claimant would still be found disabled if he stopped using drugs or alcohol." Id. (citing 20 C.F.R. § 404.1535(b)(1)). "[T]he claimant bears the burden of proving that the substance abuse is not a contributing factor material to the disability determination." Id. at 1281.

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 19-25. At step one, the ALJ observed that Plaintiff "has not engaged in substantial gainful activity since October 1, 2007, the alleged onset date." Tr. at 19 (emphasis and citation omitted). At step two, the ALJ found Plaintiff suffers from "the following severe impairments: degenerative disc disease

of the cervical spine, bipolar disorder, and alcohol dependency." Tr. at 19 (emphasis and citation omitted). At step three, the ALJ ascertained that Plaintiff's "impairments, including the substance use disorder, meet the criteria of Listing 12.09B of 20 CFR Part 404, Subpart P, Appendix 1."[6] Tr. at 21 (emphasis and citation omitted). Although meeting a Listing typically ends the inquiry and results in an individual being disabled, the ALJ engaged in a second five-step sequential inquiry because substance abuse is involved.

The second five-step sequential inquiry was performed as "[i]f [Plaintiff] stopped all substance use." Tr. at 22. At step two, the ALJ determined that Plaintiff's "remaining impairments would cause more than a minimal impact on [her] ability to perform basic work activities; therefore, [Plaintiff] would continue to have a severe impairment or combination of impairments." Tr. at 22 (emphasis omitted). At step three, the ALJ found that Plaintiff "would not have an impairment or combination or impairments that meets or medically equals the criteria of any impairment listed in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 22 (emphasis and citation omitted).

The ALJ determined Plaintiff's residual functional capacity ("RFC") as follows:

> If [Plaintiff] stopped all substance use, she would have the [RFC] to perform light work, . . . except that she would have to avoid more than frequent climbing, kneeling, or crawling; that she would have to avoid more than occasional crouching or exposure to unprotected heights or hazards; and that she would be restricted to simple, routine, repetitive tasks with no more than occasional interaction with the general public.

---

[6] Listing 12.09 is the Listing dealing with Substance Addiction Disorders, and it states in pertinent part: "Behavioral changes or physical changes associated with the regular use of substances that affect the central nervous systems. The required level of severity for these disorders is met when the requirements in any of the following (A through I) are satisfied. . . . B. Depressive syndrome. Evaluate under 12.04." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.09B.

Tr. at 23 (emphasis omitted).  At step four, the ALJ found that "[Plaintiff] would be unable to perform her past relevant work," as a "practical nurse."  Tr. at 24 (emphasis and citation omitted from first quotation).  At step five, after "[c]onsidering [Plaintiff's] age, education, work experience, and [RFC]," the ALJ found that "there would be a significant number of jobs in the national economy that [Plaintiff] could perform," including housekeeper, mail clerk, and office helper.  Tr. at 24-25 (emphasis and citation omitted).  The ALJ determined that Plaintiff's "substance use disorder is a contributing factor material to the determination of disability, because she would no longer be disabled if she stopped all substance use."  Tr. at 25 (emphasis omitted).  Therefore, concluded the ALJ, "[Plaintiff] has not been disabled . . . at any time from the alleged onset date through the date of th[e D]ecision."  Tr. at 25 (emphasis omitted).

### III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ."  Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)).  "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'"  Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)).  The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  It is not for this Court to reweigh the evidence; rather,

the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

Plaintiff alleges three (3) specific points of error: 1) "[t]he ALJ improperly determined that substance abuse was a material factor contributing to [Plaintiff's] disability"; 2) "[t]he ALJ improperly determined [Plaintiff] was capable of light work"; and 3) "[t]he ALJ failed to give special weight to [Plaintiff's] treating physicians as required by law." Memorandum in Support of Complaint (Doc. No. 18; "Pl.'s Mem."), filed November 30, 2012, at 2. Although Plaintiff delineates these points of error as three (3) separate issues, Plaintiff relies solely on the opinion of one treating physician, James Moore, M.D. ("Dr. Moore"), to support her contentions.[7] See id. at 6-9. In fact, the allegations of error can all be discussed within one (1) general category: whether the ALJ assigned the appropriate weight to Dr. Moore's opinion. Defendant, in response, contends that the ALJ assigned the appropriate weight to the opinion of Dr. Moore and that the ALJ's Decision is supported by substantial evidence.

---

[7] Throughout Plaintiff's Memorandum, she refers to treating physicians, but Plaintiff's argument relies solely on Dr. Moore's opinion, and Plaintiff makes no arguments relating to other physicians.

-6-

Memorandum in Support of the Commissioner's Decision (Doc. No. 19; "Def.'s Mem."), filed January 29, 2013, at 5-10.

### A. Dr. Moore's Opinion and Treatment Notes

On May 27, 2011, Dr. Moore completed a "Physician Questionnaire," Tr. at 461-65, in which he opined that Plaintiff is "[u]nable to meet competitive standards" in the categories listed under mental abilities and aptitudes needed to do unskilled, semi-skilled, and skilled work, as well as in the categories listed under mental abilities and aptitude needed to do particular types of jobs, Tr. at 463-64. Dr. Moore noted that prior to completing the questionnaire, he saw Plaintiff four (4) times beginning in October 2010. Tr. at 461. He listed Plaintiff's medications as seroquel, abilify, and xanax, and he indicated that Plaintiff has short term memory loss as a side effect of one or more of those medications. Tr. at 461. In response to the question that asks the physician to "[d]escribe the clinical findings including results of mental status examination that demonstrate the severity of your patient's mental impairment and symptoms," Dr. Moore wrote "see office notes." Tr. at 461. He opined that Plaintiff's prognosis is "guarded." Tr. at 461. He further opined that Plaintiff would miss more than four (4) days per month of work. Tr. at 465.

Of particular importance to this Court's analysis, Dr. Moore indicated that Plaintiff has signs and symptoms of "intermittent" substance dependence, Tr. at 462, and that Plaintiff's alcohol or substance abuse contributes to her limitations, Tr. at 465. Dr. Moore left blank the space provided to list the limitations affected by Plaintiff's alcohol or substance abuse and the space provided to explain the changes he would make to his description of Plaintiff's limitations if she were totally abstinent from alcohol or substance abuse. Tr. at 465.

Dr. Moore's treatment notes reflect the following. On August 17, 2010, Dr. Moore saw Plaintiff, who was accompanied by her husband. Tr. at 405. He noted that Plaintiff's last hospitalization was April 1, 2010 and "[i]t was alcohol related." Tr. at 405. After a discussion with Plaintiff and her husband, including a discussion of the "dangers of combining Xanax with alcohol," Dr. Moore noted his belief that Plaintiff "has rapid cycling/mixed state." Tr. at 405. Dr. Moore's September 14, 2010 treatment note reflects, in total, that Plaintiff "stopped the Lamictal because she thought it was really messing up her memory. Memory has improved some. She still has racing thoughts." Tr. at 407.

On March 18, 2011, Dr. Moore again saw Plaintiff. Tr. at 466-67. His notes reflect that she was "seen at her request with her husband." Tr. at 467. At that time, her medications were abilify and xanax. Tr. at 467. She reported to Dr. Moore that "[s]he currently uses alcohol" and that "[s]he consumes varuabke [sic] alcoholic beverages per week." Tr. at 466. Dr. Moore, Plaintiff, and Plaintiff's husband "spent over 30 minutes discussing [Dr. Moore's] assessment that the main problem is [Plaintiff's] borderline personality disorder and [Plaintiff and her husband's] interpersonal difficulties and the[ ] significant danger of xanax, especially in conjunction with alcohol." Tr. at 467. Dr. Moore diagnosed Plaintiff with "borderline personality," "nondependent alcohol abuse," and "bipolar affective mixed mod [sic]." Tr. at 467 (capitalization omitted).

Plaintiff reported to Dr. Moore on May 11, 2011 that "seroquel has caused great improvement" in that "she is less moody." Tr. at 468. Plaintiff also reported some family situations that were causing her angst. Tr. at 468. Dr. Moore's diagnoses generally remained the same as they were on March 18, 2011: "bipolar affective mixed mild,"

-8-

"nondependent alcohol abuse," and "borderline personality." Tr. at 468 (capitalization omitted). Plaintiff was to return to see Dr. Moore in three (3) months. Tr. at 469.

On May 27, 2011, Plaintiff returned to see Dr. Moore "primarily to review [her] application for disability." Tr. at 471. Plaintiff told Dr. Moore that "[s]he feels [her] memory impairment is [the] main factor preventing her from being able to work, also [her] anxiety." Tr. at 471.

On July 7, 2011, Plaintiff reported that she felt "so so," and she explained to Dr. Moore that she and her husband had an argument. Tr. at 476. Apparently, either after that argument or a different argument, Plaintiff "went to spend the night with her parents, [she] started drinking, [her parents] threw her out, she returned home, made some suicidal com[m]ents, [and] consider[ed] [going] to the hospital[ but] did not." Tr. at 476.[8] Dr. Moore again "urged [Plaintiff] to avoid alcohol, especially when angry or depressed." Tr. at 476.

### B. Legal Standard

The Regulations instruct ALJs how to weigh the medical opinions[9] of treating physicians[10] properly. See 20 C.F.R. § 404.1527(d). Because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's medical opinion is to be afforded

---

[8] Dr. Moore noted that Plaintiff's story was "a bit confusing." Tr. at 476.

[9] Medical opinions are statements from physicians that reflect judgments about the nature and severity of the claimant's impairment, including symptoms, diagnosis, prognosis, and what the claimant can still do despite the impairment. 20 C.F.R. § 404.1527(a)(2).

[10] A treating physician is a physician who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. See 20 C.F.R. § 404.1502.

controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(d)(2). When a treating physician's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering factors such as the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician. Id.

If an ALJ concludes the medical opinion of a treating physician should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when: (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's own medical records. Phillips v. Barnhart, 357 F.3d 1232, 1240-41 (11th Cir. 2004); see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence). The ALJ must "state with particularity the weight he [or she] gave the different medical opinions and the reasons therefor." Sharfarz v. Bowen, 825 F.2d 278, 279-80 (11th Cir. 1987); see also MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986).

Generally, a non-examining physician's opinion is given less weight than that of a treating or examining physician. 20 C.F.R. § 404.1527(d)(1). Nevertheless, every medical opinion should be considered in making the disability determination. 20 C.F.R.

§ 404.1527(d). The same factors are relevant in determining the weight to be given to a non-examining physician's opinion as are relevant in determining the weight to be given to a treating physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization." 20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5); see also 20 C.F. R. §§ 404.1527(f), 416.927(f). "[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. Unit B 1981) (citing 20 C.F.R. § 404.1526 (1980)); see also 20 C.F.R. § 404.1527(d)(2).

### C. Analysis

In the ALJ's Decision, he discussed the totality of the medical evidence, including Dr. Moore's treatment notes. Tr. at 20-21. Pertinent to the instant dispute, the ALJ summarized Dr. Moore's May 2011 opinion (memorialized on the Physician Questionnaire form). Tr. at 21. The ALJ found that Dr. Moore's opinion was deserving of "little weight" because 1) "Dr. Moore offered no analysis or rationale to support his opinions, which appear inconsistent with his stated global assessment of functioning (GAF) of 50"; and 2) "Dr. Moore failed to address the significance of [Plaintiff's] ongoing alcohol dependency in his assessment of her mental and social functioning." Tr. at 21.

The ALJ assigned "great weight" to the opinions of the non-examining State agency consultants who "opined that [Plaintiff] was capable of performing a limited range of light work, restricted to relatively simple tasks with limited social interaction" because those opinions "were consistent with the medical record." Tr. at 24 (citing Tr. at 392-95, 423-30,

449-51). The ALJ also assigned "considerable weight" to the opinion of Carlos Kronberger, Ph.D., a psychological expert who testified at the December 6, 2011 hearing, finding that Dr. Kronberger's opinion was "consistent with the medical evidence." Tr. at 24; see Tr. at 33-52, 192. The ALJ noted that "Dr. Kronberger, the medical expert, testified that the medical evidence supports a diagnosis of alcohol dependency and non-compliance with prescribed medication." Tr. at 24. The ALJ summarized Dr. Kronberger's observation "that Dr. Moore's assessment of [Plaintiff's] mental functioning did not sort out the effects of her alcohol dependency or address what [Plaintiff] might be able to do if she were sober and stable on medications." Tr. at 24.

After reviewing the ALJ's Decision and the evidence in the record, the undersigned finds that the ALJ's Decision is supported by substantial evidence. Plaintiff argues that "[t]he ALJ improperly determined that substance abuse was a material factor contributing to [Plaintiff's] disability." Pl.'s Mem. at 6 (emphasis and capitalization omitted). Plaintiff contends that Dr. Moore's opinion that Plaintiff has "intermittent" dependence on alcohol and that her alcohol abuse contributes to her limitations adequately addresses the issue. Id. Plaintiff's contentions are flawed. Dr. Moore did not address the "key factor" related to Plaintiff's alcohol problem. See Doughty, 245 F.3d at 1279 (citing 20 C.F.R. § 404.1535(b)(1) (recognizing that the "key factor" in the materiality determination "is whether the claimant would still be found disabled if he stopped using drugs or alcohol"). A review of Dr. Moore's opinion reveals that he failed to opine as to what limitations would remain if Plaintiff stopped drinking alcohol or how the alcohol abuse contributes to Plaintiff's limitations. In fact, Dr. Moore left blank the portion of the questionnaire specifically asking him to explain what

-12-

limitations Plaintiff would have if she "were totally abstinent from alcohol or substance abuse." Tr. at 465. Given the opportunity to adequately address the issue, Dr. Moore failed to do so. The ALJ appropriately observed, therefore, that Dr. Moore "offered no analysis or rationale to support his opinions." Tr. at 21.

Plaintiff further argues that the ALJ failed to fully and fairly develop the record. Pl.'s Mem. at 6-7. While the ALJ has a duty to develop the record, the burden remains on Plaintiff to prove that she is disabled and that her alcohol abuse is not a contributing factor material to her disability.[11]  See Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003) (citation omitted) (stating that "the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim"). Plaintiff did not carry her burden in this instance.

Moreover, as explained by the ALJ, there exists substantial evidence in the record to support his Decision. While a non-examining physician's opinion is typically given less weight than that of a treating or examining physician, any opinion can be rejected if "the evidence supports a contrary conclusion." Oldham, 660 F.2d at 1084. Here, the ALJ did not outright "reject" or completely discount Dr. Moore's opinion; the main infirmity with Dr. Moore's opinion is that it provides no insight on the key factor in the materiality determination. Nevertheless, the ALJ provided more weight to the opinions of non-examining physicians.

---

[11] At the beginning of the hearing held on August 9, 2011, the ALJ stated on the record before Plaintiff and her counsel that Dr. Moore opined "that alcohol contributes to the limitations but [he] doesn't say to what extent." Tr. at 65. At the close of that hearing, the ALJ explained his intentions of holding a supplemental hearing and calling a "psych [medical expert] and a VE." Tr. at 81. Plaintiff's counsel stated, "I'm confident that everything we would want is in, but I didn't know if you would leave [the record] open to still submit additional [evidence] or not?" Tr. at 82. The ALJ indicated that the record would be left open for one week for counsel to submit any additional evidence. Tr. at 82. Counsel did not submit additional evidence.

Plaintiff does not challenge the weight assigned to those physicians, and upon review, the undersigned finds the ALJ's assignment of weight to those opinions to be supported by substantial evidence.

In sum, Plaintiff has selected one (1) opinion from the record (Dr. Moore's opinion) and seeks to have only that opinion form the basis of a finding of disability. Considering the totality of the evidence, however, including the other medical opinions in the record and the testimony of Plaintiff, the ALJ reasonably found that Plaintiff's alcohol abuse is a contributing factor material to her disability and but for Plaintiff's continued alcohol abuse, she would not be disabled. These findings are supported by substantial evidence.

## V. Conclusion

Upon review, the undersigned finds that the ALJ properly assessed Dr. Moore's opinion, and the ALJ did not err in assigning that opinion little weight. The ALJ's Decision is supported by substantial evidence. Accordingly, it is

**ORDERED:**

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) **AFFIRMING** the Commissioner's final decision.

2. The Clerk is further directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida on August 30, 2013.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

jlk
Copies to:
Counsel of Record

-14-